Argument not to exceed 15 minutes per side. Mr. Rice, you may proceed for the appellate. Thank you, Your Honor, and may it please the Court, Matt Rice on behalf of the State, I'd like to reserve three minutes for rebuttal. Tennessee's elected representatives passed a law that requires sexual performances that are harmful to minors to occur in adult-only zones. That law comports with the Constitution and for three reasons this Court should reverse. What did the law add that wasn't already covered by Tennessee obscenity law? It added new locations, restrictions to new locations. The existing law in 911B was limited to premises. The parties haven't briefed the scope of premises, but the legislature's understanding was that that may not cover all of the situations in which this type of entertainment was being performed. What locations are we talking about? Is that the public property and anything that could be viewed by a minor? So there's two separate provisions here. There's the public property provision and there's also the provision that applies in anywhere that the performances could be viewed by a person who is not an adult. As we lay out in our briefing, we do not think that plaintiff has standing to challenge the public property provision. Plaintiff admitted at trial that it does not perform on public property. What about the other provision that seems to cover just about everywhere that isn't public property? So we don't think it's everywhere that isn't public property. We think that that provision, the could-be-viewed phrase in that statutory provision refers to locations that the entertainment could permissibly be viewed by a minor. Now plaintiff claims the state is rewriting... Why doesn't that cover the home? Your Honor, it theoretically could cover the home, but for three different reasons we do not think that that raises any constitutional problem for us. First, plaintiff hasn't actually shown or briefed why there's a unique First Amendment problem with respect to restrictions in the home. They kind of gesture at the Stanley case, but the Stanley case has been greatly limited in subsequent precedent. Second, plaintiff has not shown that there is a substantial number of applications of this law that are occurring in the home. And just to step back and think about this for a second, plaintiff has raised a facial over-breath challenge. They have to show that a substantial number of applications of this law are unconstitutional. And there is no evidence that shows containing nudity, sexual excitement, sexual conduct, sadomasochistic abuse that is patently offensive and appeals to the pure interest of minors and lacks value is happening in the home in front of children. I would hope that's not a common occurrence, and there's certainly no evidence in the record to show that this is a substantial number of applications of the act. And plaintiff bears the burden. The facial over-breath doctrine is a disfavored doctrine. The Supreme Court has stated that they have vigorously enforced the requirement that the plaintiffs show that there is a substantial number of unconstitutional applications. This court said the same thing in the connection distribution case. Can you explain why we don't have standing here? I'm particularly interested in your best case on standing in a situation where there's a challenge to contact-based regulations, over-breath vagueness. Why don't we have standing here? We've set out two separate arguments for why we think the court lacks standing. And I'll focus my efforts on the adults-only provision as we have independent arguments with respect to the public property provision. We do know that this court has said in prime media that standing operates on a provision-by-provision basis. And even when you're raising an over-breath claim, you still have to go provision-by-provision. This court has said so repeatedly. For the adults-only provision, a plaintiff, to establish pre-enforcement standing, must show an intention to engage in conduct that is prescribed by the act. But here, plaintiffs did not introduce into evidence the content of its future shows. Rather, it attempted to rely on clips from its prior shows. What do we do with the fact that the district court may find this effect on this, that we have these videos that you're referencing, but the district court finds that the plaintiff intends to continue producing these types of shows in support of this mission? So, Your Honor, I think our fundamental position, whether this was a clip from the intended future show or from the prior show, is that you cannot show that you intend to run afoul of the act, because you cannot show that your shows would lack value without analyzing the work as a whole. The Supreme Court has repeatedly stated that you cannot look at one explicit scene and determine that the content lacks value. The court said so in Ashcroft. And here, without the entirety of the prior show in the record, there's no basis for the court to conclude that the prior shows lack value, and thus no basis to infer that the future shows would lack value. There was testimony that the shows didn't have value for folks under the age of 15 or something along those lines. Two points on that, Your Honor. First, I want to be clear, this value inquiry is a legal question. The Supreme Court said so in the Reno case. It said that appellate courts can provide some consistency and regularity to the obscenity case law through the value inquiry. So there's nothing about the third prong that requires this court to defer the district court's determination as to whether there would be value or not. Second, in our view, the district court applied the wrong value standard. It declined to apply Davis-Kidd's reading of the harmful to minors definition. I mean, I struggle with that argument from your brief. I don't see how Davis-Kidd could have construed a statute that's enacted 30 years later. I mean, Davis-Kidd specifically says that it's construing the display statute. Your Honor, we disagree. The statute at issue here, the Adult Entertainment Act, specifically cross-references section 39-17-901, the exact provision that was construed in Davis-Kidd. Davis-Kidd says it's construing the display statute. Davis-Kidd states explicitly that it is adopting the narrowing construction that has been adopted by the 11th Circuit. And then it goes on to explain that the 11th Circuit had narrowly construed the third prong of the harmful to minors definition to apply to content that lacks value to a reasonable 17 years. That goes to the merits. But you're trying to apply it to standing. So what's the best case you have that has applied a narrowing construction from a state high court to standing? Feger, Your Honor. It's a decision from this court. The Feger case involved a speech restriction. The Michigan Supreme Court adopted a narrowing construction of the restriction at issue. And then the court applied that narrowing construction when determining whether the plaintiff in that case intended to engage in conduct that was prescribed by the act. I'll also point out, Intervenor cites a slew of cases that claim that we're mixing the merits and the standing inquiry. Almost all of those cases do not occur in the pre-enforcement context. So plaintiff is, the mixing of the merits and standing, he's pulled quotes, I'm sorry, Intervenors have pulled quotes from cases that don't even ask the threshold question that this court is required to ask in order to establish pre-enforcement standing. I'll also point out that it seems entirely... If we reject your argument that Davis-Kidd applied a limiting construction to the 2023 law, what's your best argument that there's no standing at that point? Our argument, if you reject our Davis-Kidd construction, is that there was insufficient evidence because clips from the prior shows are insufficient to make a value determination whether we're talking about the baseline being for toddlers or teenagers. So if, in this scenario, if Davis-Kidd goes away as a relevant limiting factor, you're saying you still have an injury in fact argument under the not considering the whole work. Exactly. And then I take it you still have the impending prosecution. We still have the certain threat of enforcement prong, the second prong. But you're still maintaining an injury in fact argument, is that right? That's correct, based on the lack of evidence. What relief are you looking for from this court? Your Honor, we're seeking reversal from this court. Whether on the merits or on standing grounds, but the district court has entered a sweeping injunction and we think that the court should vacate that. We've already had a trial, the court should vacate that judgment and reverse. I do want to try to touch on the... Can you talk about whether this is content-based or not? Yes, Your Honor, we do not think this is a content-based restriction. Obviously the general rule is that heightened scrutiny applies if a law is content-based, but both this court and the U.S. Supreme Court have recognized two exceptions, or rather have recognized that sometimes a restriction can refer to the content, but not impose a content-based restriction. First of all, we're talking about adult-only zones. At least three circuits have recognized that when you have a restriction on content that is harmful to minors, and minors are restricted from accessing that content, but adults can still access that content, that strict scrutiny does not apply. That's MS News v. Casado, American Booksellers v. Web, and Upper Midwest Booksellers v. Minneapolis. That approach makes sense because you have a restriction on minors' access here, but the content is unprotected as to minors. Where specifically is the adult-only zone? I've got the public property part, but beyond that, if I'm looking on the map, where is this adult-only zone that this applies to? Anywhere that there's an age-restricted venue. So we have all kinds of adult-only zones that are in the law right now. Strip clubs, minors are not allowed to access strip clubs. We do think that is the appropriate read of the state law. Now plaintiff claims that we're rewriting the statute, but that's simply not accurate. As the dictionary definitions that we cite at page 20 of our reply brief make clear, the term could can be used to refer to what a person is able to do with permission. If my daughter comes to me and says, Dad, you said we could watch TV if we cleaned our room, she's clearly referring to what she is allowed or able to do with permission. And for four reasons, we think that is the better reading of the statute here. First, the district court's reading would render the location provisions entirely meaningless. Second, the district court's reading would criminalize strip clubs because the performances, minors can sneak into strip clubs after all. Third, the legislative history supports our position. And fourth, this court has an obligation to adopt an interpretation that avoids constitutional problems. We think that not only... Can I go back to the, and I understand your point about the kind of, we can't assume a misinterpretation of the statute, is that the argument? The adult-only zones is different than the secondary effects, right? Yes. That would have been point two, I assume.  What Supreme Court case, what are we looking at there that are not secondary effects but support the adult-only zones? Is that Ginsburg or... The cases supporting the adult-only zones argument? I mean, you cited three circuit cases. What Supreme Court cases that are not secondary effects cases? Your Honor, I do think those generally stemmed out of the secondary effects jurisprudence, the decisions in the other three circuits. I don't think they were strictly treated, though, as secondary effects. The courts there weren't looking to whether the statutes at issue there addressed secondary effects. They recognized that because the law is restricted to an adult-only zone, the only restriction on adults' access to this content is a location-based restriction. Now, there's a restriction on minors' access to this content, but it's unprotected as to minors'. So they reason that this is properly treated as a time, place, manner restriction. I see that I'm over my time, Your Honor. You'll have your rebuttal. Thank you, Your Honor. We'll hear from, and you all are splitting your time. That's right, Your Honor. Eight minutes for myself and seven for Ms. Stewart. Good morning, Your Honors. My name is Bryce Timmons, and along with my co-counsel, Melissa Stewart, I represent the plaintiffs in this matter, the appellees, friends of George's. We've chosen to divide our time so that we can avoid conflating the issues of standing versus merits, and so I'll be addressing the issue of standing. Before the court reaches the merits issues, the court should look at the record to determine whether the district court made sufficient findings to support that friends of George's has standing, and it did. In the 70-page opinion, the court addressed all of the factors of standing and made specific findings of fact that were supported by the underlying record and cited to in the underlying record to find that friends of George's. Is this Davis-Kidd analysis and the narrowing construction there and how it applies in sort of the standing context? How it applies in the standing context? Well, Your Honor, that really is a merits question, but the Davis-Kidd court, as you noted, explicitly said it was addressing only the display statute. It declined to address the statute in other contexts. Also, Davis-Kidd predates the Reno and Ashcroft analyses of which it probably runs afoul, and Ms. Stewart is prepared to address that in great detail. There's also the part about, as your friend on the other side argued, that we have to look at, I forgot the exact words, but the performance as a whole because we don't have a video of the entire show. That's not accurate, Your Honor. Judge Parker reviewed at length entire performances. A number of them were played in the courtroom. Judge Parker describes in his order which part of the performances would have potentially, arguably run afoul of the statute, and he specifically, and in the record, there's actually a stipulated exhibit containing many more videos which Judge Parker indicated he might view in camera if he felt like he needed to. Those are all testified about in the record at 1401, 1417, and 1418. The judge explicitly determined that that material could be viewed by a law enforcement officer to violate the AEA. That finding is at 1401. Some of these videos went on for 10 minutes. This wasn't a single explicit scene. These are comedy sketch shows, too, so they're not going to be hour-long performances. They're going to be... Well, how many sketches are in a show? I'm trying to think of one where I've seen the entire thing. They could be 10, maybe. So what is the relevant thing? Is it the entire show? I would think you'd have to look at the entire show, right? Not just the 10 minutes. Well, wouldn't that defeat the purpose of the statute generally? If the statute is to protect very young children, minors, 5-year-olds, 10-year-olds, from raunchy sexual behavior, then if the minor is there for an entire sketch that meets this inappropriate-for-minors definition, which itself is vague, then it would defeat the purpose of the statute if the minor is able to be present for that sketch. That's like saying that it would defeat the purpose... One chapter of Lolita should be enough. You shouldn't look at the whole book. But, I mean, I think we're supposed to look at the whole book, right? I would think that argument could be made, Your Honor. But you could easily divide these shows into separate performances. And, again, the entire shows are in the record. The fact that we chose to view certain segments in the courtroom was a matter of brevity. We had two days. We actually had one day to conduct a trial and ran into two. I don't understand. When you say the entire show is in the record, what does that mean? The videos themselves, all of the videos of these shows are in the record. You're saying the whole hour and a half is in the record, but in the courtroom, for purposes of the trial, you just played what was arguably the offending scene for minutes or whatever. We played whole sketches that we say arguably would have run afoul of the AEA's language. Okay. Can I go back to Davis Kidd for a second about this question about whether this is a merits inquiry? My understanding, under Susan B. Anthony and other cases, we do have to kind of look at what the statute would prohibit, right? I mean, it does kind of bleed into the merits, doesn't it? We have to have some idea of what the statute prohibits in order to find out, to assess whether you are arguably going to violate it, right? Yes, Your Honor. However, the question is, does it arguably violate the AEA? Even if you apply this narrowing construction, it still doesn't actually save a statute. Okay, but I'm just saying we need to know what the statute means and then the arguably applies to the conduct, right? So here's a statute. Tennessee Supreme Court may or may not have said, you say no, your friend says yes, what the statute means, and then we say, okay, is this arguably going to violate the statute? Davis Kidd explicitly says that it's only drawing this narrowing construction as it relates to the display of materials like Playboy and Penthouse and things like that. It declined to review the statute as a whole. It struck down a narrow portion of the statute. Yes, but I mean, the later statute, it seems like all these statutes are related. They're taking the definitions. I mean, in fact, all of the stuff is related, right? It all comes from Miller, essentially, memoirs or whatever, and we are in this world where most of the states have statutes that are fairly similar and they're being construed in certain ways by state supreme courts. I don't know why it's some radical difference or something, and all these statutes invariably have been upheld, right? Other circuits are essentially on vagueness grounds or whatever. Miller, we accept the Miller test is not vague, right? Well, this isn't the Miller test. I know. I mean, I understand that, but I'm just saying that's kind of the constellation that we're in right now. Well, the Mukasey Court, after the Supreme Court remanded Ashcroft, it went back to the Third Circuit, and the Mukasey Court specifically analyzed this narrowing construction and said it was ridiculous, that it would fundamentally defeat the purpose of the claimed purpose of the statute and that it was completely inconsistent. I'm sorry to interrupt you, but I know you're the standing guy. Yeah. Can you talk about the kind of impending prosecution part of this? Because I think that's... It was stipulated, Your Honor, that in the pretrial order, and it's in the record at 1396, District Attorney Mulroy stipulated that he intended to enforce the criminal penalties contained in Section 1407 specifically, that it was his duty and that he intended to enforce them. Now, I thought there was something in your opposition's brief to suggest that he disavowed enforcement as to FOG. Is that in the record or what? That is not it. That never happened, Your Honor. So nothing, as far as you know from the record, there's nothing to suggest that he's disavowed enforcement as it relates to FOG? Your Honor, he never disavowed enforcement as to anyone, as to anything. That's not a contested fact. That's in the pretrial order as a stipulation. I see my time has expired. I'll pass to Ms. Stewart. Good morning, Your Honors, and may it please the Court. The Adult Entertainment Act is unconstitutional for at least two reasons. First, it is a criminal statute that targets speech based on both the content and the identity of the speaker. And second, because the state did not choose the least restrictive means of regulating that protected speech. Can you tell us what's the location that this statute applies to? I get the public property part, but as it relates to the other provision that some of the law and the law is aware could be viewed by a minor, where does that apply? Yes, Your Honor. So the language of the statute is anywhere where the adult-oriented entertainment could be viewed by someone who is not an adult. And as the district court noted in its conclusions of law, that is virtually unlimited. And the state is asking this court to rewrite that clause to apply to establishments that card at the door and create these adult-only zones. But that, first of all, that language, that argument about adult-only zones is found in Supreme Court law only in Justice O'Connor's dissent in Reno. That was the argument she was making, and it's an argument that the Supreme Court explicitly rejected. Second of all, when the Tennessee legislature wants to narrow a location clause in an obscenity statute or in a statute like this that's seeking to protect minors, it knows how to do so. In the display statute that was at issue in Davis-Kidd, that statute uses language anywhere a minor is permissibly admitted. And again, that statute, the display statute, is regulating commercial activity, commercial businesses, brick-and-mortar bookstores that may display inappropriate materials, which brings me to the Davis-Kidd question that Your Honors have raised. That narrowing construction was applied by the Tennessee Supreme Court only after the court made an explicit finding that that statute, the display statute, was readily susceptible to a narrowing construction that, in the Tennessee Supreme Court's view, saved it from running afoul of the First Amendment. But that statute is a far cry from the AEA that's at issue in this case. That statute contained a number of affirmative defenses, including the accompaniment of a parent or guardian. It also contained a long list of what the state would have to prove in order to prove that something was displayed inappropriately. Provisions like if the materials were displayed above five and a half feet, if they were partially covered, if they were displayed behind the counter, things like that that allowed a brick-and-mortar bookseller to have a very clear understanding of how not to run afoul of the law, even if they weren't quite sure which exact materials might run afoul of the law. So that statute was far more narrowly drawn, was much more specific. And for that reason, the Tennessee Supreme Court was able to reasonably apply a narrowing construction that stopped the law from running afoul of the First Amendment. And this court should not apply a narrowing construction here where this law does not have any of those boundaries that keep it from being enforced discriminatorily. Now, why is this, according to your argument, a contents-based regulation as opposed to a time, place, manner restriction? Well, Your Honor, first of all, at trial the defense did admit, they did concede, that the law does reference content in the statute. Whether or not a performance is harmful to minors is defined exclusively by the topic, the subject matter, the content. If you remove the content from the statute, then the statute is essentially meaningless. And time, place, and manner restrictions have to be facially content-neutral. Now, the state has also argued that this court should apply a secondary effects, the secondary effects doctrine, and analyze this statute under intermediate scrutiny. But the secondary effects doctrine also should not apply here because for the secondary effects doctrine to apply, the primary purpose of the legislature has to be, you know, eliminating secondary effects of, for example, explicit, sexually explicit speech. But even in the state's brief, they don't argue that that was the primary motive of the legislature. They merely argue that the AEA inherently addresses secondary effects. And that is not what the secondary effects standard requires. There are... The Supreme Court, though, and these other courts, MS News, and these other circuits, they just, they don't analyze these cases really as content-based restrictions, do they? Yes, Your Honor, they do. In fact, the Supreme Court addressed a statute in Ashcroft v. ACLU, COPA, the Child Online Protection Act, that used a definition of harmful to minors that is almost identical to the one here. And the Supreme Court said in both Ashcroft and in Reno, the purpose of these laws is to protect children from the primary effects of sexually explicit material, sexual speech. And so for that reason, it must be analyzed under strict scrutiny. And because this law is subject to strict scrutiny, it is the state's burden to prove that it is the least restrictive means of regulating this speech. And the state has not met that burden here. Friends of Georgia has put forth at least three ways that this statute could have been more narrowly drawn, and it is the state's burden to prove that those would be less effective ways of protecting children. Do you seek anything, or do you just want it to stay the way the order was below? Your Honor, we would ask this court to affirm the entirety of the district court's order. The AEA is also... Can we or should we provide a narrowing construction that would, again, you argued that the law is unconstitutional, that could bring it into, to ensure that it satisfies the First Amendment. Your Honor, even if this court were to adopt every single one of the state's narrowing constructions, this law would still run afoul of the First Amendment. It would still fail under the narrow tailoring prong of the strict scrutiny analysis. The AEA is without a textual scienter requirement. And besides that, and that alone should be enough to strike this law down, because the Supreme Court has been very clear that statutes that seek to regulate obscenity like this must at least have a knowing requirement as to the contents and character of the prohibited materials. And not only did Tennessee not include a textual scienter requirement, they then placed this law in Title VII, which is a series of default municipal zoning laws. They placed a statute that carries potential felony penalties in Title VII, which importantly places this law outside the purview of Tennessee's default mens rea statute, that catch-all in Title XXXIX with the rest of Tennessee's criminal code. That portion, that catch-all mens rea statute explicitly only applies to crimes contained in Title XXXIX itself. And by placing this in Title VII, they've eliminated that kind of backup mens rea requirement. So the court would have to read in a mens rea requirement, in spite of the fact that there isn't one in the text, and that the Tennessee legislature intentionally placed it outside of that purview. I see that my time has expired here. Can I briefly conclude? The government has offered no evidence, either at trial or before this court, for why a scienter requirement, affirmative defenses for things such as parental consent, or a more narrowly drafted location clause, as we find in Tennessee's other statutes, would be a less effective way of protecting children from indecent speech. Instead, the state has repeatedly asked this court to rewrite this statute to make it conform with constitutional requirements. This court should decline to do so. We ask that you affirm. Thank you. Mr. Vettel? Yes, Your Honor. A few points of clarification. First of all, the entirety of the shows are not in the record. I'm happy to have the court look at trial exhibit one and trial exhibit two. There are only clips from those shows. The entirety of the shows have themes like dragnificant seventies, drag rocks. Can you address the prosecutor's statement that your friend on the other side filed? Yes, of course. Yes, Your Honor. D.A. Mulroy made a generalized statement that he intends to enforce all Tennessee laws, including the act. But this court, in both Davis and the online merchants case, have stated that in determining whether there's a certain threat of enforcement, the question is not whether in the abstract that the law... What about in... What was the case Judge Bush wrote at... Universal Life. Universal Life. Isn't there... Doesn't he suggest that maybe a general statement like that would be enough? Well, Davis, I believe, postdates Universal Life. Davis v. Corain, and it states explicitly a statement that, quote, in the abstract that the law might be enforced in the abstract does not... But if there were... That wouldn't help you because if there were a conflict, we'd go with the earlier case. Well, I do think that neighbors is not extremely helpful to them because two things. The court there made clear that, one, it thought there was a certain threat of enforcement because the applicable standard had been clarified, whereas the prior standard was less than clear. It incorporated an attorney general opinion into the substantive standard. And second, the court there stated that it wasn't even clear that in the past there had been... That prosecutors knew that they could enforce the law. And so for those two reasons, the court found that different. But Davis state... Davis v. Corain. It seems pretty clear. I agree with you on that. Okay. What about Ashcroft and Reno and the Strix group? Ashcroft and Reno do not involve adult-only zones, Your Honor. We do not object that potentially difference... Is there a meaningful difference, though, between adult-only zones and kind of the... Like what was issued in Ashcroft, at least the Internet? Sure. We think there's a very meaningful difference because the courts there made clear that you were reducing the adult population to what was fit for children. And that is simply not happening in this case. Adults can access this content. They simply have to do so in adult-only zones, just like they have to attend strip clubs in adult-only zones. So we don't think that Ashcroft or Reno bear on this question at all because they're... I believe it was Reno, the earlier case. I get them mixed up. It went back and forth a few times. But the earlier case, they talked about specifically how the technology did not exist to kind of create the same type of adult-only zone that we're talking about here. Three, I want to make sure... My friend on the other side said that even if this court accepts every single argument that we say as to state law, that the law is still unconstitutional, I think that only highlights that we are not asking this court to resolve the merits at the standing stage because if it truly were the merits question, then it would not... She could not have made that statement. Finally, Your Honor, plaintiff repeatedly states that we are rewriting the law. Again, I would direct this court to the dictionary definitions at page 20 of our reply brief. We do think that we are staying consistent with the statutory text and that all the interpretive principles cut in our favor. Thank you, Your Honor. Thank you. Thank you both sides for your briefs, helpful briefs and arguments. The case will be submitted.